## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **FOCUSPOINT INTERNATIONAL, INC.** <br> 15830 Foltz Industrial Pkwy <br> Strongsville, Ohio 44149 <br><br> Plaintiff, <br><br> vs. <br><br> **JUDY SOFERMAN** <br> 17257 13th Ave NW <br> Shoreline, WA 98177 <br><br> Defendant. | CASE NO. <br><br><br><br> **COMPLAINT FOR** <br> **DECLARATORY JUDGMENT** |

For its Complaint against Defendant Judy Soferman, Plaintiff FocusPoint International, Inc. ("FocusPoint"), hereby states as follows:

### OVERVIEW OF THE DISPUTE

1. FocusPoint is a critical event management company that specializes in emergency response as a service.

2. FocusPoint offers a product called CAP Tripside Assistance ("CAP"), which provides various travel assistance services for CAP customers.

3. Soferman accessed CAP coverage through non-party MD2 International ("MD2"), a concierge medical provider.

4. On or about February 21, 2025, Soferman suffered injuries while skiing in Canada.

5. Although Soferman sought to invoke medical repatriation benefits under CAP, she did not meet the contractual criteria for those benefits, resulting in FocusPoint being unable to provide medical repatriation to Soferman.

## THE PARTIES

6. FocusPoint is a corporation organized and existing under and by virtue of the laws of the State of Ohio with its principal place of business located at 15830 Foltz Industrial Pkwy, Strongsville, OH 44149.

7. Judy Soferman is an individual residing in the State of Washington.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the parties and this dispute pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are from different states, so there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Soferman is subject to this Court's personal jurisdiction.

10. The Court has personal jurisdiction over FocusPoint because it transacts business in this state.

11. The Court has personal jurisdiction over Soferman pursuant to the Ohio forum selection clause found in the CAP Rules and Regulations to which Soferman is bound.

## FACTUAL BACKGROUND

**A.     The CAP Plan Agreement and CAP Rules and Regulations**

12. On or about November 30, 2023, MD2 and FocusPoint entered into a CAP Tripside Assistance Travel Plan Agreement ("Agreement"). A copy is attached as **Exhibit 1**.

13. The Agreement incorporates the CAP Rules and Regulations as Exhibit A ("CAP Rules").

14. On or about November 30, 2024, MD2 and FocusPoint executed an Addendum to the Agreement. A copy is attached as **Exhibit 2**.

15. As a beneficiary of the Agreement, Soferman is bound by the CAP Rules.

16. One of the benefits provided by the Agreement is "medically necessary repatriation." (CAP Rules, p. 3.)

17. The CAP Rules define "Medically Necessary Repatriation" as:

[F]ollowing an illness or accident suffered during the period of travel, requiring a CAPMED Customer to obtain medical treatment, **FocusPoint, under its sole discretion and consideration**, will arrange transportation for the CAPMED Customer from the facility where he or she is receiving medical treatment to the hospital of choice in the traveler's home country, **subject to the Customer, after determination by FocusPoint personnel, meeting the following 3 conditions**:

1. **the CAP Customer is hospitalized (admitted) at a medical facility during the period of travel and his or her medical condition requires continued inpatient care, and**

2. the CAP Customer is medically stable for commercial or private air ambulance flight, as determined by FocusPoint, and

3. the availability of a hospital bed, in his or her primary country of residence for further medical treatment or recovery.

As part of a medical repatriation or relocation, FocusPoint will make all necessary arrangements for ground transport to and from the hospital, as well as pre-admission arrangements, where possible, at the receiving hospital. FocusPoint will arrange for a medical escort(s) to accompany the CAPMED Customer if medically necessary. A CAPMED Customer will not be transported by a medically dedicated air transport service if he or she can be safely transported via commercial airline in business class or by road.

(CAP Rules, p. 5 (emphasis added).)

18. CAP provides for medical transport where a customer is hospitalized in an **inpatient** facility outside of his or her home country:

MEDICAL TRANSPORT BENEFITS

Medical transport services are available to any CAP Customer who qualifies for medical transport services in accordance with these rules and regulations, **is hospitalized as an inpatient outside of the country of his or her home or place of business** (or is traveling over 100 miles from home/primary residence) and is

3

>accepted as a patient into an available inpatient bed by an admitting physician at the hospital of the CAP Customer's choice in their home country.

(CAP Rules, p. 9 (emphasis added).)

19. The CAP Rules require that FocusPoint receives documentation of a medical assessment **prior to** FocusPoint providing medical repatriation and that the customer be medically stable for transport:

>TRANSPORT CRITERIA
>
>FocusPoint will make all arrangements for medical transport and repatriation.
>
>Decisions regarding the urgency of the case, the best timing and the most suitable means of transportation will be made by FocusPoint Medical Staff after consultation with the local attending physician. CAP and CAPMED Customers agree to the local medical attendants and physicians releasing personal information.
>
>**FocusPoint will require a medical assessment in order to determine travel assistance plan benefits and stability for transport. The medical evaluation requires consultation between the CAP Customer's treating physician, who will provide a final or interim diagnosis that will require continued inpatient hospitalization, and a FocusPoint physician, who will review and evaluate the treating physician's diagnosis in order to determine the CAP Customer's transport requirements**.
>
>**A CAP Customer must be medically stable for medical transport**. Assuming all other medical transport criteria are met, a CAP Customer who is initially considered medically unstable for transport to the hospital of the CAP Customer's choice in their home country may first be transported to the nearest appropriate medical facility for initial stabilization. After this initial stabilization, FocusPoint will arrange continued transport to the hospital of the CAP Customer's choice in their home country if they continue to meet medical transport criteria.

(CAP Rules, p. 10 (emphasis added).)

20. The Agreement acknowledges that FocusPoint's performance of CAP benefits "requires the support and cooperation of the Customer." (Agreement, Section 6.2(a).)

21. Accordingly, the Agreement requires the customer to cooperate in providing information and documentation to FocusPoint:

4905-0115-2115.1

> **As such, Customer agrees to reasonable cooperation with FocusPoint, to provide any information, data and/or documentation (collectively, "Data") that FocusPoint considers necessary** for assistance and crisis response operations staff to adequately determine CAP protected persons eligibility for benefit and to properly perform its obligations hereunder. **Such Data shall be provided by the Customer in the form and by the dates instructed by FocusPoint in order to reduce the possibility of delays**, errors or inaccuracies during a CAP crisis event, assistance service delivery, or confirmation of eligibility by FocusPoint staff to CAP protected persons.

(Agreement, Section 6.2(a) (emphasis added).)

22. The Agreement holds FocusPoint harmless for delays caused as a result of customer delays in providing information to FocusPoint.

> Customer acknowledges that FocusPoint, FocusPoint's officers, employees, directors, managers, shareholders, agents, legal counsel, accountants, guarantors or FocusPoint contractors, shall not be held liable for any denied or delayed assistance or response to a crisis event, affecting a protected Customer, as a result of a) erroneous, incomplete, or inaccurate protected person data, or b) Customer non-compliance with clause 6.2 above.

(Agreement, Section 6.2(b).)

### B. Communications between Soferman and FocusPoint

23. On February 21, 2025, at approximately 6:22 pm EST FocusPoint was notified that Soferman was a patient at Whistler Emergency Health Center ("Whistler") in Vancouver, Canada, and that Soferman was requesting transport to Seattle, Washington.

24. At approximately 7:30 pm EST, the FocusPoint Director of Operations, Stephanie Kluver, informed Dr. Myint, a member of Soferman's care team at Whistler, that FocusPoint could not transfer Soferman from a free-standing ER per the terms of the CAP Rules, and that Soferman needed to be admitted to an inpatient facility.

25. At approximately 8:22 pm EST, Dr. Myint texted Kluver that Soferman's husband had decided to transfer Soferman to a hospital 2 hours away. **Dr. Myint informed FocusPoint that, per Soferman's husband, Soferman would have surgery at that facility**.

26. The next day, on February 22, 2025, at approximately 12:36 pm EST, Dr. Myint informed FocusPoint that Soferman had been admitted to an inpatient facility and that Soferman had again decided to seek transport to Seattle. FocusPoint informed Dr. Myint of the medical records that Soferman would need to provide in order for FocusPoint to assess her eligibility for transport.

27. At approximately 5:52 pm, EST, Dr. Myint emailed photos and ER notes to FocusPoint, but did not provide any other medical records.

28. At approximately 6:32 pm EST, FocusPoint contacted non-party vendor SkyCap to arrange a ground ambulance.

29. At approximately 7:15 pm EST, Dr. Myint informed FocusPoint that she was still trying to obtain Soferman's medical records.

30. Between approximately 7:23 and 9:24 pm EST, Dr. Myint provided partial medical records to FocusPoint.

31. At approximately 9:35 pm EST, FocusPoint informed Dr. Myint that ambulance transport would be available the following day.

32. At approximately 9:58 pm EST, Dr. Myint informed FocusPoint that Soferman's husband had informed Dr. Myint that **Soferman would be proceeding with surgery in Vancouver**.

33. On February 27, 2025, Dr. Myint informed FocusPoint that Soferman was discharged and that the case could be closed.

    **C.    Soferman's allegations against FocusPoint**

34. On August 11, 2025, Soferman, through counsel, sought payment from FocusPoint in excess of $111,000 related to "uncovered medical expenses" and pain and suffering.

6

4905-0115-2115.1

35. Soferman alleged that FocusPoint's failure to provide medical repatriation in a timely manner resulted in Soferman undergoing emergency surgery under suboptimal conditions.

36. On August 29, 2025, FocusPoint responded via letter through counsel, stating that Soferman failed to meet the criteria for medical repatriation under the CAP Rules – particularly the requirements for inpatient admission and transfer of medical records – and that any perceived delay on the part of FocusPoint was a result of Soferman's and her care team's delay in providing required information to FocusPoint

37. Specifically, Soferman was not admitted into an inpatient facility until the day after her injury, and FocusPoint never received complete medical records in order to able to assess whether Soferman was eligible for transport.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment

38. FocusPoint incorporates by reference as through fully rewritten herein all allegations contained in paragraphs 1-37 of the Complaint.

39. A controversy has arisen between FocusPoint and Soferman as to FocusPoint's compliance with the Agreement and CAP Rules.

40. Soferman alleges that FocusPoint was negligent in failing to provide medical repatriation services to her in connection with her February 21, 2025 injury and that FocusPoint breached the Agreement and CAP Rules.

41. FocusPoint contends that the CAP Rules require, among other things, inpatient admission and transfer and review of medical records before medical repatriation services are scheduled. Soferman did not meet these criteria prior to voluntarily deciding to proceed with surgery in Canada.

42. FocusPoint seeks a declaration that FocusPoint did not breach any obligations to Soferman under the Agreement or CAP Rules in connection with the events described herein.

43. FocusPoint seeks a declaration that it did not breach any duties owed to Soferman.

44. FocusPoint seeks a declaration that it is not liable to Soferman for damages related to FocusPoint's failure to provide medical transport and/or medical repatriation services.

45. FocusPoint seeks a declaration that it is not liable to Soferman for any damages related to medical treatment received by Soferman and/or pain and suffering damages related to Soferman's February 21, 2025 injury.

46. Such a declaration will conclusively establish the rights and legal relations of the parties and is proper, pursuant to 28 U.S.C. § 2201.

WHEREFORE, Plaintiff FocusPoint International, Inc. demands judgment against Defendant Judy Soferman, as follows:

(i) For a declaration that FocusPoint: (1) did not breach any obligations to Soferman under the Agreement or CAP Rules in connection with the events described herein; (2) did not breach any duties owed to Soferman; (3) is not liable to Soferman for damages related to FocusPoint's failure to provide medical transport and/or medical repatriation services; (4) is not liable to Soferman for any damages related to medical treatment received by Soferman and/or pain and suffering damages related to Soferman's February 21, 2025 injury.

(ii) For FocusPoint's attorneys' fees and costs;

(iii) For prejudgment and post-judgment interest; and

(iv) For such further relief as the Court may deem proper.

        Respectfully submitted,

        */s/ Michael B. Pascoe*
        Michael B. Pascoe (0080899)
        Sara S. Dorland (0095682)
        ICE MILLER LLP
        600 Superior Ave, Suite 1600
        Cleveland, Ohio 44114
        (216) 395-5073
        michael.pascoe@icemiller.com
        sara.dorland@icemiller.com

        *Attorneys for Plaintiff FocusPoint International, Inc.*