IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FOCUSPOINT INTERNATIONAL, INC., | ) | CASE NO.  1:25 CV 2219 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| | ) | |
| JUDY SOFERMAN, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion to Dismiss and/or Transfer filed by

Defendant, Judy Soferman.  (Docket #7.)

I.      Factual Allegations and Procedural History.

Plaintiff, FocusPoint International, Inc. ("FocusPoint'), located in Strongsville, Ohio, is a

critical event management company that specializes in emergency medical evacuation and crisis-

response services.  (Docket #9 at p. 3.)  MD2 (a non-party to this action) is a concierge medical

provider located in Washington.  (Id.)  FocusPoint and MD2 entered into an agreement – the

"CAP Tripside Assistance Travel Plan Agreement" – whereby MD2 was able to offer

FocusPoint's services to MD2's patients.  (Id.)  At all times relevant, Defendant, Judy Soferman

("Ms. Soferman") and her husband were patients of MD2.  (Docket #8 at p. 6.)

On February 21, 2025, Ms. Soferman was injured while skiing in Whistler, Canada.  (Id.

at p. 8.)  Ms. Soferman was taken to the Whistler Health Centre for evaluation with multiple

fractures to her tibia and compression of an artery, causing concern for vascular compromise. (Id.) Ms. Soferman asserts that "treating physicians strongly recommended prompt evacuation to a home trauma center in Seattle for definitive care." (Id.) Ms. Soferman's husband contacted MD2 and MD2 then contacted FocusPoint to request evacuation to Seattle. (Id.)

Ms. Soferman asserts that due to a "series of delays, shifting requirements, and refusals by FocusPoint to authorize evacuation on a timeline consistent with the medical urgency described by the treating physicians," she was forced to undergo surgery in Vancouver. (Id.) FocusPoint asserts that it was attempting to arrange transport for Ms. Soferman from Vancouver to Washington but that the information FocusPoint required to approve and facilitate Ms. Soferman's transfer was not provided to FocusPoint by the Sofermans or Ms. Soferman's medical team. (Opposition Brief at Exhibit 2.) Ms. Soferman's medical care in Canada was not covered by insurance and she states she now faces "six-figure medical bills and ongoing medical harm . . . that could have been avoided had FocusPoint performed as promised." (Motion to Dismiss at pp. 3-4.)

On August 11, 2025, Ms. Soferman's attorney in Washington sent a settlement demand letter to FocusPoint, detailing what it asserts were FocusPoint's failures and resulting harms, and seeking compensation for uncovered medical expenses and other damages. (Docket #9-2 at pp. 1-3.) Counsel for Ms. Soferman indicated the potential for claims against FocusPoint for negligence, breach of contract, and violations of the Washington Consumer Protection Act. FocusPoint responded on August 29, 2025, asserting that it had no liability; that any delay in transport was caused by Ms. Soferman's failure to provide necessary records; and, that any damages would be limited to refunding plan fees. (Docket #9-2 at pp. 4-5.) On October 8, 2025,

-2-

Counsel for Ms. Soferman sent Counsel for FocusPoint a second letter, responding in detail to the arguments made by FocusPoint; reiterating the information contained in its initial demand letter; and, providing additional detail regarding the facts supporting Ms. Soferman's potential claims. (Docket #9-2 at pp. 6-9.)

On October 16, 2025, FocusPoint filed its Complaint for Declaratory Judgment in this Court.  (Docket #1.)  FocusPoint seeks a declaration that FocusPoint: (1) did not breach any obligations to Ms. Soferman under the CAP Tripside Assistance Travel Plan Agreement entered into between MD2 and FocusPoint or the CAP Rules and Regulations, as it relates to Ms. Soferman; (2) did not breach any duties owed to Ms. Soferman; (3) is not liable to Ms. Soferman for damages related to FocusPoint's failure to provide medical transport and/or medical repatriation services; and, (4) is not liable to Ms. Soferman for any damages related to medical treatment received by Ms. Soferman and/or pain and suffering damages related to Soferman's February 21, 2025 injury.

On October 20, 2025, Counsel for FocusPoint, Michael Pascoe, sent an email to Counsel for Ms. Soferman, Shaun Huppert, asking if he would accept service of the Complaint on Ms. Soferman's behalf.  (Docket # 9-3 at p. 2.)  On November 1, 2025, after receiving no response, Mr. Pascoe followed up with a second email.  (Id. at p. 1.)  On November 4, 2025, Mr. Huppert indicated that before responding, his client would like time to speak with Counsel in Ohio.  (Id.) Mr. Pascoe responded, indicating that since over a week had already passed, he believed this to be an unreasonable request.  (Id.)  Later that same day, Mr. Huppert notified Mr. Pascoe that Ms. Soferman had agreed to a waiver of service.  (Id.)  On the morning of November 5, 2025, Counsel for FocusPoint emailed waiver forms to Mr. Huppert.  (Id.)  Later that day, Mr. Huppert

emailed Mr. Pascoe, stating, "Hello, Please mail Judy Soferman a waiver to sign directly. Our firm will not be representing her in your Ohio case. We do not have authorization to sign. Her address is . . . " (Docket #9-3 at p. 1.) Mr. Pascoe then mailed the waiver form to Ms. Soferman.

On November 6, 2025, Ms. Soferman filed a Complaint against FocusPoint in the King County Superior Court in Washington, asserting negligence and breach of contract, along with Washington Consumer Protection Act claims, against FocusPoint. In her Motion to Dismiss, Ms. Soferman states that other Defendants are included in that lawsuit. However, the Court has reviewed the Complaint in the Washington case and the only named Defendant is FocusPoint.[1]

On November 14, 2025, Ms. Soferman's Ohio counsel (Counsel of Record in this Declaratory Judgment Action) indicated that she would not waive service in the Declaratory Judgment Action. FocusPoint obtained service on November 18, 2025 at Ms. Soferman's home. It is unclear whether Ms. Soferman has obtained service in the Washington lawsuit. (Docket #4.)

On December 8, 2025, Ms. Soferman filed her Motion to Dismiss and/or Transfer. (Docket #7.) Ms. Soferman argues that FocusPoint's lawsuit amounts to an anticipatory declaratory judgment action filed by FocusPoint to gain a tactical advantage after learning that a Washington damages action was imminent. Ms. Soferman asks the Court to decline jurisdiction or stay this action in favor of the lawsuit she filed in Washington. In the alternative, Ms. Soferman argues that this Court lacks personal jurisdiction over her or that the case should be

---

[1]

While FocusPoint indicated that it had not been served with and was otherwise unable to locate a copy for review, the Court was able to obtain a copy of Ms. Soferman's Washington Complaint through LEXIS and has reviewed the same for purposes of Ms. Soferman's Motion to Dismiss.

transferred to the Western District of Washington. On December 19, 2025, FocusPoint filed its Opposition Brief, arguing that the Court should retain jurisdiction over its Declaratory Judgment Action; that this Court has personal jurisdiction over Ms. Soferman; and, that transfer to the Western District of Washington is not appropriate. FocusPoint argues that Ms. Soferman was bound by the CAP Rules and Regulations which included certain prerequisites to the provision of evacuation services – which it alleges she did not satisfy – along with forum selection and choice of law provisions.[2] (Docket #9.) Ms. Soferman filed a Reply Brief on December 24, 2025. (Docket #10.) FocusPoint filed a Supplement on February 20, 2026. (Docket #22.)

## II. Discussion.

The Declaratory Judgment Act, 28 U.S.C. § 2201, "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at p. 282. In determining whether to exercise jurisdiction over a declaratory judgment action, the Court considers:

---

[2]

     In its Complaint, FocusPoint alleges that, "[a]s a beneficiary of the Agreement, Soferman is bound by the CAP Rules" and by a forum-selection clause in those rules specifying Ohio as the forum for any legal action arising between the Parties. (Complaint at Paragraphs 11, 15-16.) Ms. Soferman argues that she did not negotiate or sign the agreement between MD2 and FocusPoint and for various reasons that she is not subject to the CAP Agreement venue provisions.

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
(4) whether the use of a declaratory judgment action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and,
(5) whether there is an alternative remedy that is better or more effective.

*Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. Mich. 1984).

As set forth above, the entire controversy between the Parties relates solely to past conduct that is addressed in its entirety by Ms. Soferman's Washington lawsuit. A declaratory judgment is intended for "the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing." "Declaratory judgment is inappropriate solely to adjudicate past conduct." *Am. Clothing Express, Inc. v. Cloudfare, Inc.*, Case No. 2:20 CV 2007, 2021 U.S. Dist. LEXIS 34451, at *25 (W.D. Tenn. Feb. 24, 2021 (quoting *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3rd Cir. Pa. 2006)). "'[T]he usefulness of a declaratory judgment action is significantly curtailed once a subsequent, coercive suit is filed.'" *Awesome Prods. v. JoySuds LLC*, Civil Action No. 25-50, 2025 U.S. Dist. LEXIS 257251, at *23 (E.D. Ky. Dec. 12, 2025) (quoting *Internet Transaction Solutions, Inc. v. Intel Corp.*, Case No. 2:06 CV 35, 2006 U.S. Dist. LEXIS, at *3 (S.D. Ohio May 8, 2006)).

"Where a pending coercive action, filed by a natural plaintiff, would encompass all the issues in a declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified. This is true whatever the nature of the coercive action underlying the declaratory action – the important distinction in the case law is between situations where some uncertainty beyond the possibility of litigation exists (i.e., trademark infringement) and those where the injury

-6-

is already complete." *AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir. Tenn. 2004). "Normally, when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.'" *AmSouth Bank,* 386 F.3d 763, 786 (citing 10B Wright, Miller & Kane § 2765 at 638 (3d ed. 1998)("The courts have also held that it is not one of the purposes of the declaratory judgment act to enable a prospective negligence action defendant to obtain a declaration of nonliability.")). The second *Grand Trunk* factor weighs heavily in favor of dismissal.

Furthermore, FocusPoint filed its Declaratory Judgment Action in anticipation of Ms. Soferman's potential lawsuit, a factor weighing heavily against entertaining FocusPoint's Complaint. A declaratory judgment action filed in anticipation of a substantive lawsuit is viewed "most unenthusiastically" by the Courts. *International Union, UAW v. Dana Corp.*, Case No. 3:99 CV 7603, 1999 U.S. Dist. LEXIS 22525, at *10 (N.D. Ohio Dec. 6, 1999).[3] "[W]here a putative defendant files a declaratory action whose only purpose is to defeat liability in a

---

[3]
     Citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. Tex. 1983)("Anticipatory suits are disfavored because they are an aspect of forum shopping."); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2nd Cir. N.Y. 1978)("When a declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the Plaintiff's chosen forum."); *909 Corp. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990)("Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum."); *Kmart Corp. v. Key Indus., Inc.*, 877 F. Supp. 1048, 1053 (E.D. Mich. 1994)("suit brought purely in anticipation of a filing by the defendant in another forum should be dismissed"); *Charles Schwab & Co., Inc. v. Duffy*, Case No. C 98-03612, 1998 U.S. Dist. LEXIS 19606 (N.D. Cal. 1998)(appropriate to depart from the first-to-file rule where suit was anticipatory); *Excel Music, Inc. v. Simone*, Case No. 95-3626, 1996 U.S. Dist. LEXIS 242, *6 (E.D. La. 1996)(party filing suit in anticipation of a suit in another forum should not be rewarded for what amounts to forum shopping)).

subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum – a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *AmSouth*, 386 F.3d 763, 788.  "Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Id.*

The letters sent by Counsel for Ms. Soferman clearly indicated Ms. Soferman's intention to file suit.  FocusPoint did not respond to Ms. Soferman's second letter – sent on October 8, 2025 – and instead filed its Declaratory Judgment Action in this Court 8 days later.  And, while FocusPoint alleges "gamesmanship" on the part of Ms. Soferman with regard to its request that she waive service, emails between the Parties reflect nothing questionable whatsoever.  Based on the facts and circumstances in this case, the third *Grand Trunk* factor weighs heavily in favor of dismissal.

Turning to the first and fifth *Grand Trunk* factors, the question is not whether this Court has the ability analyze the breadth of claims at issue in this matter and evaluate the evidence, but whether the Declaratory Judgment Action filed by FocusPoint in this Court would best resolve the entire dispute.  Ms. Soferman's Washington lawsuit includes claims for breach of contract and negligence, along with a claim arising under Washington consumer protection law which is not addressed in FocusPoint's Declaratory Judgment Action.  Potential counterclaims filed in FocusPoint's Declaratory Judgment Action may indeed permit this Court to settle the entire controversy.  However, "[t]he existence of a coercive action" plays an important role in considering whether there is a superior alternative remedy to the Federal declaratory judgment

-8-

action. *AmSouth*, 386 F.3d 763, 791.  Key witnesses and evidence are located overwhelmingly in Washington; the only connection to Ohio is the location of FocusPoint's corporate office; and, the Washington action will resolve this dispute in its entirety.  The Washington lawsuit is a better and more effective remedy.  The first *Grand Trunk* factor is neutral.  The fifth *Grand Trunk* factor weighs in favor of dismissal.

With regard to the fourth *Grand Trunk* factor, whether allowing the declaratory judgment action to proceed would cause friction between State and Federal courts, the Sixth Circuit has provided three additional sub-factors to consider: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the State trial court is in a better position to evaluate those factual issues than is the Federal court; and, (3) whether there is a close nexus between the underlying factual and legal issues and State law and/or public policy, or whether Federal common or statutory law dictates a resolution of the declaratory judgment action. *Scottsdale Ins. Co. v. Flowers*, 211 F.3d 964, 968 (6th Cir. Mich. 2000).

Federal law is not implicated in the resolution of the issues raised in FocusPoint's Declaratory Judgment Action and the Parties dispute whether the choice of law and venue provisions set forth in the CAP Agreement – both of which specify Ohio – are binding upon Ms. Soferman.  The underlying factual issues are important to an informed resolution of the case.  The Washington State Court may not be in a superior position to evaluate the negligence and breach of contract issues in this case in the event Ohio law applies.  However, the Washington State Court is best situated to identify and enforce the public policies that form the basis of their own State consumer protection laws.  The Court finds that the fourth *Grand Trunk* factor favors

-9-

neither FocusPoint nor Ms. Soferman.[4]

## III.     Conclusion.

The *Grand Trunk* factors weigh in favor of dismissal and the Court declines to exercise jurisdiction over FocusPoint's Declaratory Judgment Action.

The Motion to Dismiss (Docket #7) filed by Defendant, Judy Soferman, is hereby GRANTED.

This case is hereby terminated.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: __March 13, 2026__

---

[4]

     As stated above, the Parties dispute whether Ms. Soferman is bound by the forum selection clause in the CAP Agreement. Because the Court declines to exercise jurisdiction over FocusPoint's Declaratory Judgment Action, questions regarding proper venue are within the purview of the pending Washington lawsuit.